**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CARDINAL HEALTH 108, LLC,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 16-00079-KD-M** |
| | ) | |
| **HEMACARE PLUS, INC.,** | ) | |
|     **Defendant/Third-Party Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JANIS SPRATLIN,** | ) | |
|     **Third-Party Defendant.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff's Amended Motion for Summary Judgment (Docs. 20, 22),[1] Defendant Response (Doc. 39) and Plaintiff's Reply (Docs. 32, 48).[2]

**I.  Procedural Background**

This case stems from Defendant Hemacare Plus, Inc. (Hemacare)'s non-payment of approximately $667,565.69 for specialty pharmaceutical products from Plaintiff Cardinal Health 108, LLC (Cardinal)[3] in 2015.  (Docs. 1, 1-1).  In its February 25, 2016 Complaint, Cardinal asserts six (6) counts against Hemacare for: goods sold/delivered (Count I); open account (Count II); account stated (Count III); unjust enrichment (Count IV); breach of contract (Count V); and

---

1 Cardinal did not seek leave to amend its summary judgment brief (Doc. 21).   Nevertheless, the Court finds the amendment is permitted and the operative brief is Doc. 22 (amended). Doc. 21 is deemed **WITHDRAWN**.

2 Hemacare filed a Rule 56(d) motion and motion to compel arbitration, which were denied (Docs. 34, 35). There are no motions as to Spratlin and thus, summary judgment is inapplicable to her and Hemacare's claims against her remain pending in this case.

3 Cardinal is a global company that specializes in medical and pharmaceutical distribution, technologies and supply services to various health organizations, including, but not limited to, hospitals, pharmacies, nursing homes, image centers, and clinics.   (Doc. 1 at 2).

attorneys' fees/costs (Count VI).[4]   On April 13, 2016, Hemacare filed an *untimely*[5] answer denying all claims, and a three (3) count third-party complaint for fraud, conversion and unjust enrichment against Janis Spratlin (Spratlin), its former bookkeeper, alleging that she is responsible for the amounts owed as she exceeded her authority by ordering specialty pharmaceutical products from Cardinal, billing insurance carriers and diverting the proceeds from those transactions to her personal account.   (Doc. 6).

On June 1, 2016, the Rule 16(b) Scheduling Order issued, setting the close of discovery as February 24, 2017.   (Doc. 10).   On July 15, 2016, Cardinal served its first set of discovery on Hemacare, including requests for admission and interrogatories.   (Docs. 19, 22-2, 22-3 (Aff. Jackson at 3-4)).   Hemacare did not provide responses to Cardinal's discovery within 30 days of service as required under Rules 34 and 36.   (Doc. 22-3 (Aff. Jackson at 3-4)).   On September 26, 2016 Cardinal moved for summary judgment -- without any discovery responses from Hemacare -- asserting that summary judgment should be granted in its favor because Hemacare's failure to respond means that the facts contained therein are deemed admitted.

On October 7, 2016, Hemacare provided *untimely*[6] responses to the requests for production and interrogatories, but still failed to respond to the requests for admission.   (Doc. 25).   In the interrogatory responses, Hemacare denies that Spratlin had authority to make the purchases from Cardinal.   (Doc. 39 at 27-31 at ##4-6, 10-11, 15).   On summary judgment, Hemacare neither references its failure to timely respond to the requests for admission nor opposes summary judgment on that basis.   To date, Hemacare has not responded to Cardinal's

---

4 Cardinal misnumbered the counts in the complaint.   The Court has simply renumbered them.

5 Hemacare's answer was due March 23, 2016.

6 Hemacare filed the discovery responses *untimely* -- almost two (2) months late.

2

requests for admissions.    (See also Doc. 48-1 (2nd Aff. Jackson)).

## II.    Requests for Admission

Cardinal seeks summary judgment based on Hemacare's failure to timely file responses to its requests for admission asserting that, as a matter of law, Hemacare's failure means the admissions are undisputed and "deemed admitted" in this case.

Rule 36(a)(3) of the Federal Rules of Civil Procedure provides that "[a] matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."    Rule 36(b) specifies further:

> **(b) Effect of an Admission; Withdrawing or Amending It**. A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

With regard to such circumstances, the Eleventh Circuit in Garmley v. Cochran, 651 Fed. Appx. 933, 936 (11th Cir. 2016) (emphasis added) concluded as follows:

> …***The district court did not abuse its discretion by deeming admitted the requests for admission***....neither Garmley nor Southern responded to Henderson's requests for admissions or moved the district court to withdraw the admissions. ***We have previously found that a party's failure to respond to requests for admission constituted admissions of the same, and we see no reason to depart from that rule today. See, e.g., Perez v. Miami–Dade Cty., 297 F.3d 1255, 1263 (11th Cir. 2002)…..***

Additionally, in Perez v. Miami-Dade Cty., 297 F.3d 1255, 1263-1264 and 1268 (11th Cir. 2002) (footnotes and citations omitted, emphasis added), the Eleventh Circuit explained that:

> Rule 36… governs requests for admissions…***The purpose of the rule is "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial."… If a party fails to respond within thirty days, then "[t]he matter is admitted."***

3

> *Id*….***Once the matter is admitted,*** Rule 36(b) provides that ***it is "conclusively established unless the court on motion permits withdrawal or amendment of the admission."***…
>
> ***
>
> ….when a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party…uses the rule to harass the other side or, as in this case, with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources….

Moreover, akin to the facts of this case, the court in <u>Jacobs v. Electronic Data Sys. Corp.</u>, 2006 WL 3742202, *2-3 (N.D. Ala. Dec. 18, 2008) (emphasis added, footnotes omitted) concluded -- on summary judgment -- that unanswered requests for admission were admitted:[7]

> …Jacobs's Title VII claim…cannot survive summary judgment....***Jacobs has filed no motion to withdraw the admissions or set aside the…order. Nor did Jacobs even address the issue*** in her brief ***in opposition to summary judgment, despite the defendants having argued that summary judgment was warranted on the basis of the admissions***....As ***Rule 36(b) expressly provides for withdrawal only "on motion," the court will not sua sponte withdraw Jacobs's admissions or set aside the order***….
>
> ***…Jacobs has opposed summary judgment with other evidence that tends to contradict the admissions.*** Jacobs's deposition testimony is generally inconsistent with her admissions…[] ***But admissions are unlike other evidence in that a party cannot rebut its own admissions by introducing evidence that contradicts it.*** *In re Carney, 258 F.3d 415, 420 (5th Cir.2001)* ("Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement [sic] stage by contradictory affidavit testimony or other evidence in the summary judgment record."); *United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir.1987); see also 8A Wright, Miller & Marcus, § 2264, at 572-74. **Once an issue is deemed admitted, the admission is conclusive unless withdrawn upon motion to the court**. Perez v. Miami-Dade County, 297 F.3d 1255, 1264 (11th Cir.2002); United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir.1992); Stubbs v. Comm'r, 797 F.2d 936, 937-38 (11th Cir.1986)* (per curiam).

As stated, the court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists

---

7  <u>Cf.</u> <u>Russell v. Gilliam</u>, 2006 WL 1663666, *3 (S.D. Ala. Jun. 9, 2006) (assessing the consequences of untimely responses to requests for admission as within the court's discretion, finding withdrawal of admissions would result in no prejudice).   The Middle District of Florida also applied its discretion in <u>Reid v. McNeil</u>, 2015 WL 5755898, *4-7 (M.D. Fla. Sept. 29, 2015) (construing a party's repeated denials of the factual allegations throughout the case as a motion to withdraw any admissions and concluding that "withdrawal will subserve the 'ascertainment of the truth and the development of the merits[]'" and would not prejudice the opposing party).

4

for trial. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249...(1986).* ***If this case were to proceed to trial, Jacobs would not be permitted to introduce evidence to rebut the admissions she has already made during the discovery phase of this litigation.*** *Williams v. City of Dothan, 818 F.2d 755, 762 (11th Cir.1987); see also Am. Auto. Ass'n, 930 F.2d at 1120. ...****These admissions preclude recovery....****Hulsey, 367 F.3d at 1244.* Accordingly, there is no genuine issue of material fact ...and EDS is entitled to judgment as a matter of law.

Further, as set forth by the Fifth Circuit in In re Carney, 258 F.3d 415, 420-421 (5ᵗʰ Cir. 2001) (footnotes omitted and emphasis added):

> *Federal Rule of Civil Procedure* 56(c) specifies that "admissions on file" can be an appropriate basis for granting summary judgment....***Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement [sic] stage by contradictory affidavit testimony or other evidence in the summary judgment record...***[] Instead, the proper course for a litigant that wishes to avoid the consequences of failing to timely respond to Rule 36 requests for admission is to move the court to amend or withdraw the default admissions in accordance with the standard outlined in Rule 36(b).
>
> ...[Defendant] did not avail...[itself] of the procedural mechanism for attempting to avoid the effect of...default. Consequently, ***application of this Court's precedent applying the plain language of Rule 36 compels us to conclude, on the record before us, that the validity of the...claim has been conclusively established***. Moreover, this Court has affirmed a grant of summary judgment based on default admissions coupled with a district court's denial of a request to withdraw those admissions....[Defendant's] failure to move...to withdraw his admission prior to or concurrently with the....motion for summary judgment simply compels affirmance of the grant of summary judgment....:
>
> > ***We recognize the potential harshness of this result. The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case. This result, however, is necessary to insure the orderly disposition of cases; parties to a lawsuit must comply with the rules of procedure. In addition, the harshness is tempered by the availability of the motion to withdraw admissions, a procedure which [....] did not employ***.
>
> *Kasuboski*, 834 F.2d 1345.
>
> Because of...default admissions, we need not explore in detail the.... alternative holding that summary judgement [sic] was appropriate based on the absence of genuine material fact....

Finally, in the Sixth Circuit (governing Tennessee law, and here the substantive claims are governed by the law of Tennessee as explained *infra*), "...a request for admissions which is

not responded to within the applicable time period 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission.'"   Kerry Steel, Inc. v. Paragon Indus., 106 F.3d 147, 153 (6th Cir. 1997).   Additionally, a party may seek to request an admission as deemed admitted on "ultimate facts" and even where the request is "dispositive of the entire case." Campbell v. Spectrum Automation Co., 601 F.2d 246, 253 (6th Cir. 1979) (citations omitted).   Courts within the Sixth Circuit and Tennessee state courts routinely enforce Rule 36 when faced with unanswered requests for admission.[8]

   In light of the circumstances of this case and the relevant Rule 36 law, the Court finds that Cardinal's requests for admission are deemed admitted by Hemacare.   Hemacare has had numerous opportunities to respond to Cardinal's requests, but has failed to do so.   Hemacare has made no attempt to avoid the consequences of failing to timely respond to the requests – indeed not even acknowledging its failure.   Hemacare has neither mentioned nor addressed the requests on summary judgment, much less endeavored to explain or justify its failure to file (or timely file) responses.   Hemacare has not sought any relief in this Court concerning the requests via withdrawal or amendment (or otherwise).   Cardinal would be unfairly prejudiced if Hemacare were permitted – at this juncture -- to respond to the requests for admission, as Cardinal has already moved for summary judgment on the grounds that the facts asserted in the

---

   8 See, e.g., Grimes v. Middle Tenn. Hospitalists, PLC, 2013 WL 6497962, *2 (M.D. Tenn. Dec. 11, 2013); Tracy v. Heffron, 1987 WL 37916, *1 (6th Cir. Jul. 6, 1987).   See also Neely v. Velsicol Chemical Corp., 906 S.W.2d 915 (Tenn. Ct. App. 1995) (granting summary judgment based on a plaintiff's failure to respond to requests for admission…: "[A]n admission under Rule 36…'concludes the matter and avoids any need for proof'…no proof is necessary to establish a fact admitted, nor should evidence be allowed to refute the admission[]"); Porter v. Melton, 1992 WL 29821 (Tenn. Ct. App. 1992) (the "trial court erred by refusing to grant [plaintiff's] Motion to Rely Upon Requests for Admissions," after defendant failed to respond to the set of requests in accordance with Rule 36[]"); Tennessee Dep't of Human Services v. Barbee, 714 S.W.2d 266 (Tenn. 1986) ("Rule 36 is a useful tool in the preparation of a lawsuit…Unanswered requests for admission are deemed admitted and the matter requested is conclusively established for the purpose of the pending case. The admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial[]").

requests have been deemed admitted by Hemacare.

There is also no indication that Cardinal is using Rule 36 requests to "harass" Hemacare or as "a weapon" "with the wild-eyed hope" that it would "fail to answer and…admit essential elements." Perez, 297 F.3d at 1268. Rather, Hemacare simply ignored the requests for admissions, and has done so to its detriment.

Thus, the following facts/allegations are deemed admitted by Hemacare and will be treated as undisputed on summary judgment:[9]

Exhibit A to the Complaint
Ex. A are true and correct copies of the Invoices Cardinal sent to Hemacare from June-December 2015.
-Hemacare received copies of Ex. A.
-Hemacare never objected in writing to Ex. A.
-Cardinal delivered to Hemacare the specialty pharmaceuticals in Ex. A.
-Hemacare accepted the specialty pharmaceuticals delivered by Cardinal in Ex. A.
-Hemacare never refused delivery or returned any of the specialty pharmaceuticals from Cardinal in Ex. A.
-Hemacare used the specialty pharmaceuticals delivered by Cardinal in Ex. A.
-Hemacare has not paid Cardinal for the specialty pharmaceuticals in Ex. A.
-Hemacare has not paid the amounts due and owing in Ex. A.

-Hemacare has paid certain invoices received from Cardinal prior to June 2015.

Exhibit B to the Complaint
-Ex.B to the Complaint is a true and correct copy of the Terms and Conditions of Sale that accompanied the Invoices sent to Hemacare from June-December 2015.

-Hemacare received copies of the Terms and Conditions of Sale – Ex. B.

Exhibit C to the Complaint
Ex. C to the Complaint is a true and correct copy of the Account Statement showing the amounts due and owing in Ex. A.

Janis Spratlin
-Janis Spratlin was the bookkeeper for Hemacare during the relevant time period.

---

[9] As a consequence, any arguments asserted and/or evidence submitted by Hemacare on summary judgment to the contrary are moot and have not been considered on summary judgment.

-During the relevant time period, Spratlin's job responsibilities for Hemacare included ordering and/or purchasing specialty pharmaceuticals from suppliers.

-During the relevant time period, Spratlin had authority to order specialty pharmaceuticals from Cardinal.

Cardinal's motion will be assessed in light of these admissions, as set forth in Doc. 22-2.

### III.   <u>Findings of Fact</u>[10]

This case concerns Hemacare's failure to pay Cardinal approximately $667,565.69 for specialty pharmaceutical products Cardinal supplied starting in May 2015.   Specifically, from June to December 2015, Hemacare's employee, bookkeeper Janis Spratlin (Spratlin), ordered certain specialty pharmaceutical products as set forth in Cardinal's Invoices.   (Docs. 22-1, 22-2 at #1, 14).   Spratlin's job duties included ordering and purchasing such products from suppliers like Cardinal.   (Doc. 22-2 at #15).   Spratlin had the authority to order and purchase specialty pharmaceutical products from Cardinal for Hemacare.   (<u>Id</u>. at #16).

After Cardinal delivered the products to Hemacare, Hemacare accepted them, never refused delivery or returned them, and used them.   (<u>Id</u>. at #4-6).   Cardinal's product Invoices included "Terms and Conditions of Sale" which governed the transactions:

> AGREEMENT FOR SALE. Cardinal….shall sell, and…[Hemacare] shall purchase and pay for, goods distributed by Cardinal….
>
> ***
>
> PAYMENT. Payment shall be due thirty (30) days from the date of invoice, or as otherwise mutually agreed upon by the parties and indicated on…[Hemacare's] invoice….Any default by…[Hemacare] of its obligations shall accrue interest from the date payment is due at the rate one and one-half percent (1.5%) per month, or the highest rate permitted by law, on past due amounts owed to Cardinal…[Hemacare] shall be liable to Cardinal…for any costs (including reasonable attorneys' fees) which Cardinal…incurs as a result of …[Hemacare]'s

---

10 At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

default of its obligations hereunder....

\*\*\*

GOVERNING LAW. These Terms and Conditions of Sale and all other questions arising hereunder or pursuant to the parties' transactions shall be governed determined by the laws of the State of Tennessee, excluding its conflict of laws provisions.

(Doc. 22-1 at 35).   (See also Docs. 1-1, 1-2, 22-1 (including Aff. Byrd)).   While Hemacare

paid for some of the products it ordered, Hemacare eventually stopped paying Cardinal's

Invoices, resulting in the current amount owed.   Cardinal repeatedly communicated with

Hemacare about the unpaid invoices and amounts owed:

-August 31, 2015: Cardinal emailed Spratlin to collect payment of Hemacare's "past due invoices amounting to $965,633.00." (Emails000027).

-September 3, 2015: Spratlin responded, stating that she had paid certain invoices "yesterday" and would be "sending out more checks today." (Emails000026-27).

-Over the next few weeks, Cardinal continued to email Spratlin in an attempt to collect payment of Hemacare's past due Invoices. (Emails000024- 26).

-September 21, 2015, Spratlin emailed Cardinal, assuring it that additional invoices were recently paid, and that she had "more [checks] going out today." (Emails000024).

-September 24, 2015: Cardinal emailed Spratlin inquiring about the "whole payment amount for all past due invoices," which, as of that date, was "$939,482.04." (Emails000021-22).

-September 29, 2015: Spratlin emailed Cardinal stating that the "[n]ew balance is $793,791.28 plus any late fees" because she had "paid $145,690.76 last week." (Emails000021) (emphasis added). Spratlin stated Hemacare "will be sending checks until the balance is paid in full and any late fees." Id.

-October 5, 2015: Cardinal emailed Spratlin explaining that, "[a]s of the moment," the "AR Balance is $807,299.76," and providing a "breakdown" of the amount due. (Emails000019-20).

-October 7 & 12, 2015: Spratlin responded: "We will get this balance paid." (Emails000019); (Emails000015-16) ("I know we will have the account paid up.").

-November 9, 2015: Cardinal communicated with counsel for Hemacare. Hemacare

9

"realize[s] that [Cardinal] need[s] to be paid for what [it] provided," and that Hemacare "will make the payments." (Emails 000006) (stating that Hemacare's President, "will make the payments"); (Emails 000004-5) (stating that "Hemacare's President, "and I both realize that you need to be paid for what you provided"); (Emails 000005-6) ("We are working on getting the next couple of invoices paid shortly.").

-December 16, 2015: counsel informed Cardinal that Hemacare "can pay $100k/month until paid in full." (Emails 000001-2).

(Doc. 22-1 at 37-70; Doc. 22-1 (Aff. Byrd)). Hemacare made partial payments to Cardinal from August-December 2015. As of December 31, 2015, Hemacare owed $667,565.69 to Cardinal, despite Cardinal's repeated demands for payment in full. (Id.) (See also Doc. 22-1 at 72; Doc. 48-2 (2nd Aff. Byrd)).

## IV.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(c) provides as follows:

*(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment. Celotex, 477 U.S. at 323.   In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

## V.   Conclusions of Law

At the outset, while Cardinal's Complaint alleges common law claims for goods sold/delivered, open account, account stated, unjust enrichment, breach of contract and attorneys' fees/costs, Cardinal moves for summary judgment on these claims as alleged under the Uniform Commercial Code.   This is because the case concerns Cardinal's sale of goods – specialty pharmaceutical products – to Hemacare under Tennessee law, and in Tennessee the sale of goods is governed by Tennessee's version of the UCC.   "Generally speaking, transactions for

11

the sale of goods are governed by provisions of the *Uniform Commercial Code…Tenn.Code Ann. Se*c. 47–2–101, *et seq*….” Wilson Sporting Goods Co. v. U.S. Golf & Tennis Ctrs., Inc., 2012 WL 601804, *4 (Ct. App. Tenn. Feb. 24, 2012).

Additionally, a federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits. Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005); Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004). As to choice of law, “Alabama follows the principle of ‘lex loci contractus,’…a contract is governed by the laws of the state where it is made *except where the parties have legally contracted with reference to the laws of another jurisdiction*.” Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991) (emphasis added). “Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement.” Id.[11] Cardinal’s products were sold to Hemacare pursuant to Invoices which contained “Terms and Conditions of Sale” with a Tennessee choice of law provision (i.e., the parties legally contracted with reference to the laws of another state):

> GOVERNING LAW. These Terms and Conditions of Sale and all other questions arising hereunder or pursuant to the parties’ transaction shall be governed and determined by the laws of the State of Tennessee, excluding its conflict of laws provisions.

Accordingly, Tennessee law governs Cardinal’s claims in this case.[12]

## A.   Counts II & III: Open Account & Account Stated

---

[11] An exception is made “where application of that other state’s laws would be contrary to Alabama policy[]” as under those circumstances, “the parties’ choice of law will not be given effect and Alabama law will govern the agreement.” Id. at 507. In this case, there is no indication that giving the parties’ their choice of law its effect would be contrary to Alabama policy, and neither party contends as much.

[12] Hemacare’s opposition to Cardinal’s motion for summary judgment is rooted in Alabama law and relies heavily on what authority Spratlin had while employed. However, as stated *supra*, Tennessee law applies to Cardinal’s claims (i.e., Alabama law is inapplicable) and Hemacare has already admitted to Spratlin’s authority (by failing to respond to the requests for admission). In sum, neither Hemacare’s discussion of Alabama law nor of Spratlin’s authority is relevant to the present motion and as such, has not been considered.

Due to Hemacare's failure to respond to Cardinal's RFAs, Hemacare has admitted it received all Cardinal's Invoices, Cardinal delivered the products to Hemacare, Hemacare accepted the products and never refused delivery or returned same, Hemacare used the products, Hemacare has not paid Cardinal in full for the products, Hemacare still has amounts due and owing to Cardinal, Hemacare received copies of the Terms and Conditions of Sale from Cardinal, and Hemacare acknowledges the validity of Cardinal's Account Statement and Invoices showing what remains due and owing.

### 1.     <u>Open Account</u>

Concerning an open account in Tennessee, the Court has been unable to find a case discussing the specific elements for this claim and Cardinal has provided none.[13]   However, the cases which have been located appear to simply reference a Tennessee open account claim as existing when an amount is owed by a party (i.e., an unpaid balance exists) "on the books" to another party.  See, e.g., <u>Farmers Livestock Market, Inc. v. Deaton</u>, 2013 WL 4451074 (E.D. Tenn. Aug. 16, 2013); <u>Amber Brazilian Export Resources, Inc. v. Crown Labs., Inc.</u>, 2012 WL 982969 (Ct. App. Tenn. Mar. 21, 2012).

The record indicates that Cardinal and Hemacare had a series of prior dealings during 2015 through which Hemacare ordered specialty pharmaceutical products from Cardinal on an open account, Cardinal then delivered those products to Hemacare with Cardinal's invoices and Terms and Conditions of Sale, Hemacare accepted the products, and Hemacare partially paid

---

13   Cardinal asserts that Tennessee treats actions on an "open account" and "account stated" as one cause of action, citing <u>China Export & Credit Ins Co. v. Carlisle Transp. Prod. Inc.</u>, 2016 WL 4239970, *3 (M.D. Tenn. Aug. 11, 2016) (Doc. 22 at 15).   This is unclear.   The Court's review of <u>China Export</u> indicates that the case addressed the elements for an "action on account," suggesting it concerns only an "account stated" claim. And the two (2) cases cited by <u>China Export</u> (and also cited by Cardinal's citation to that case) appear to concern a claim for an "account stated" not an "open account."

Cardinal the prices per the invoices.   Hemacare's partial payments resulted in an outstanding balance – the amounts Cardinal now seeks to recover.   Additionally, by failing to respond to the requests for admission, Hemacare has admitted to the accuracy of the amount owed on the account per the Invoices, the authenticity of the Account Statement and Invoices provided by Cardinal, and that Hemacare owes Cardinal $667,565.69 as of December 31, 2015 (plus interest). See supra Section II.   As such, Cardinal's motion on this claim is **GRANTED**.

### 2.      Account Stated

With regard to account stated, per Southern Housing Co. v. Morton, 242 S.W.2d 843, 850-851 (Ct. App. Tenn. 1950):

> …[It] is an agreement express or implied as to the amount due. There must be an absolute acknowledgment of a certain sum due or a reference to something by which it can be definitely and certainly ascertained. If there is but an admission that something is due without specifying how much, there is no account stated….

The elements for this claim are: 1) a series of prior dealings between the parties on an open account, 2) an agreement between the parties concerning the amount owed on the account, and 3) a specific and unconditional acknowledgement of the obligation by the party to be charged. Hudson Bros., Inc. v. Cook, 1991 WL 148035, *4 (Ct. App. Tenn. 1991) (citations omitted). See also China Export & Credit Ins. Co. v. Carlisle Trans. Prod. Inc., 2016 WL 4239970, *3 (M.D. Tenn. Aug. 11, 2016).   Due to Hemacare's failure to respond to the requests for admission, which have been deemed admitted, Cardinal has established a series of prior dealings between the parties on an open account, an agreement between the parties concerning the amount owed on the account, and a specific and unconditional acknowledgement of the obligation by Hemacare.   See supra Section II.   As such, Cardinal's motion on this claim is **GRANTED**.

### B.      Count V: Breach of Contract

14

With regard to Cardinal's breach of contract claim in Tennessee, "there are three elements that must be proven to support a breach of contract claim: (1) the existence of an enforceable contract; (2) nonperformance amounting to breach of contract; and (3) damages caused by the breach of contract."   Kutite, LLC v. Excell Petroleum, LLC, 2016 WL 7495877, *3 (W.D. Tenn. Aug. 24, 2016).   Additionally,

> Tennessee law further provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Tenn. Code Ann*. § 47–2–204(1). The Statute of Frauds provides that, in general,
>
>> a contract for sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing or record sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.
>
> *Tenn. Code Ann*. § 47–2–201(1). Alternatively, the Statute of Frauds is satisfied and an enforceable contract results "with respect to goods for which payment has been made and accepted or which have been received and accepted." *Tenn. Code Ann*. § 47–2–201(3)(c).
>
> Whether a contract has been breached "is a pure and simple question of contract interpretation which should not vary from state to state." *Indianer v. Franklin Life Ins. Co.,* 113 F.R.D. 595, 607 (S.D.Fla.1986), *overruled in part on other grounds by Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 219 n. 12 (11th Cir.1997). "The obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." *Tenn. Code Ann*. § 47–2–301. The failure of either party to satisfy this obligation constitutes a breach.

Orlowski v. Bates, 146 F. Supp.3d 908, 923 (W.D. Tenn. 2015).   Moreover, for contract claims stemming from a party's non-payment of goods:

> …because this case involves a transaction in goods between merchants, it is governed by the sales provisions of the Uniform Commercial Code (U.C.C.), *Tenn.Code Ann*. § 47-2-101 et seq. Under the U.C.C., the remedies available to a buyer for a breach of contract by the seller depend in part on whether the buyer has accepted or rejected the goods….*Tenn.Code Ann*. § 47-2-606(1) provides:
>
>> Acceptance of goods occurs when the buyer: (a) after a reasonable opportunity to

> inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) fails to make an effective rejection…but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
>
> Upon acceptance the buyer must pay for the accepted goods at the contract rate. *Tenn.Code Ann*. § 47-2-607(1). *Trinity Industries, Inc.,* 77 S.W.3d at 175.….

Wings Manuf. Corp. v. Lawson, 2005 WL 1950115, *4 (Ct. App. Tenn Aug. 12, 2005).

Further, as noted in Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply Co., 823 F.Supp.2d 786, 804 (W.D. Tenn. 2011) (footnotes omitted), Tennessee adopted UCC 2–207(3) at Tenn.Code Ann. § 47–2–207(3), and:

> 'Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract[]'…[and] 'performance by both parties under what they apparently believe to be a contract' may be 'sufficient to establish a contract, notwithstanding the fact that no contract would have been recognized on the basis of their writings alone.'[] The rationale for such a rule is easy to apprehend. 'Sellers usually do not ship and Buyers do not receive goods unless they think they have struck a deal.'[] Under such circumstances, the terms of the agreement between the parties are the 'terms on which the writings of the parties agree' as well as the UCC's gap filling provisions.[]…'

As an initial matter then, the sale of the specialty pharmaceutical products is a sale of goods subject to Tennessee's enactment of the UCC, as per Tenn. Code Section 47-2-105(1), goods are "all things…which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities…and things in action…."   In light of Hemacare's deemed admissions, the record reflects that Hemacare placed orders from Cardinal for the products at issue, Hemacare received the products, Hemacare used the products, and Hemacare partially paid for the products.   Additionally, the products were accompanied with Invoices that included Terms and Conditions of Sale which provided the

contractual terms for the transactions.    These facts establish an enforceable written contract for the sale of goods in Tennessee and the Statute of Frauds is alternatively satisfied when payment for the goods was received and accepted by Cardinal.    Tenn. Code § 47-2-201; Orlowski, 146 F. Supp. 3d at 924.    The fact that Hemacare failed to pay the amounts due in full to Cardinal for the products ordered is undisputed on summary judgment given Hemacare's admissions. Cardinal has thus suffered damages in the amount left unpaid plus accrued interest, costs, and attorneys' fees (as provided for in the product Invoices' Terms and Conditions of Sale).    In sum, the record establishes the existence of an enforceable contract, nonperformance by Hemacare breaching the contract and damages to Cardinal due to that breach.    As such, Cardinal's motion for summary judgment on this claim is **GRANTED.**

## C.    <u>Count I: Goods Sold/Delivered</u>

On summary judgment, Cardinal asserts that Count I is "essentially one for breach of contract under Article 2 of the UCC[,]" as Hemacare breached the contract by failing to pay the amounts due and owing per the invoices.   (Doc. 22 at 14-15 and note 14).    Cardinal provides no case law showing that a claim for "goods sold and delivered" exists in Tennessee and/or that "goods sold and delivered" are part a breach of contract claim for the sale of goods in Tennessee.

Nevertheless, the Court has ascertained that under Tennessee law, "[i]n the case of goods sold and delivered, the theory is *quantum valebat* (as much as they were worth)." Menzer v. Herrera, 1986 WL 8335, *3 (Ct. App. Tenn. Jul., 31, 1986) (citing Chambliss, Bahner and Crawford v. Luther, 531 S.W.2d 108, 110 (Tenn. App. 1975)).    See also 27 TENN. PRAC. CONST. LAW § 12:19.    In Tennessee then, it appears that a "goods sold and delivered" claim is a form of *quantum meruit*, which only applies when there is no existing enforceable contract.   Id.

As the contracts between Cardinal and Hemacare – the written Invoices containing the Terms and Conditions of Sale – are enforceable and written, a claim for "goods sold and delivered" (and/or *quantum meruit)* is thus inapplicable.   Cardinal's motion for summary judgment on this claim is **DENIED** and it is **DISMISSED** as a matter of law.

**D.      Count IV: Unjust Enrichment**

"In Tennessee, unjust enrichment is applied in the absence of a contract."   Monaco Indus., LLC v. Shopper Local, LLC, 2014 WL 4678283 (E.D. Tenn. Sept. 18, 2014) (citing Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998) and World Healthcare Sys., Inc. v. SSI Surgical Servs., Inc., 2011 WL 2199979, *11 (E.D. Tenn. June 7, 2011)).   Cardinal is barred from recovery under an unjust enrichment theory against Hemacare because the record establishes that a series of express written contracts for the sale of goods (the written Invoices with the attached Terms and Conditions of Sale for the products) govern the relationship between Cardinal and Hemacare.   See, e.g., Daily v. Gusto Records, Inc., 14 Fed. Appx. 579, 587 (6th Cir. 2001); Ilar v. Wells Fargo Bank, N.A., 2014 WL 6886588, *3 (E.D. Tenn. Dec. 4, 2014); Holt v. Macy's Retail Holdings, Inc., 719 F.Supp.2d 903, 915-916 (W.D. Tenn. 2010); In Re Nissan N.A., Inc. Odometer Litigation, 664 F.Supp.2d 873, 894-895 (M.D. Tenn. 2009); Doe v. HCA Health Servs. of Tenn., 46 S.W.3d 191, 197-198 (Tenn. 2001).   As such, Cardinal's motion on this claim is **DENIED** and it is **DISMISSED** as a matter of law.

**E.      Count VI: Attorney's Fees & Costs**

Pursuant to the contract between the parties – the product Invoices' Terms & Conditions of Sale --- Cardinal (as a prevailing party) seeks **$14,729.34** for attorney's fees already incurred and billed, **$7,413.12** for "work in progress" attorneys fees (already incurred but not yet billed),

**$487.62** in costs and **$275.00** in expert fees.   (Docs. 22 at 3, 22-3 (including Aff. Jackson), 22-4 (Aff. Fleming)).

Tennessee adheres to the American Rule for assessing an award of attorney fees: "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.3d 303, 308 (Tenn. 2009).   The product Invoices (Terms and Conditions of Sale) contain a contractual provision creating a right for Cardinal to recover attorneys' fees from Hemacare as follows:

> PAYMENT…[Hemacare] shall be liable to Cardinal…for any costs (including reasonable attorneys' fees) which Cardinal…incurs as a result of [Hemacare]'s default of its obligations hereunder…

(Doc. 22-1 at 35).   Cardinal can thus recover costs including reasonable attorneys' fees due to Hemacare's failure to pay the full bill.

The starting point for any award of attorney fees by a federal court is the calculation of the "lodestar." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Id. The Court should not consider hours "not reasonably expended" or that were "excessive, redundant, or otherwise unnecessary." Id. at 434.   The Court may then exercise its discretion to reduce an award "where the documentation of hours is inadequate." Id. at 433.   In Tennessee, to establish the lodestar amount and any adjustments, as specified in Larango v. Wolfe, 2016 WL 7383786, *2 (E.D. Tenn. Nov. 17, 2016):

> …a court is to consider the factors laid out in the *Tennessee Rules of Professional Conduct*, including:

19

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent; (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and (10) whether the fee agreement is in writing.

*Tenn. Sup. Ct*. R. 8, R. of Prof. C. 1.5(a); *Killingsworth*, 104 S.W.3d at 534.

See also e.g., Shuman v. Simply Right, Inc., 2016 WL 6875965, *1 (M.D. Tenn. Nov. 22, 2016).[14]  In Tennessee, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at *4.  "Ultimately…the calculation of attorneys' fees is left to the discretion of the district court, and, in reaching its conclusion, the court need not articulate its findings as to each factor." WMC Indus. Inc. v. IPS Corp., 2016 WL 5661858, *3 (W.D. Tenn. Sept. 29, 2015).

### 1.    **Reasonable Rate**

Cardinal has submitted affidavits of counsel (Matthew R. Jackson, Esq. and John Davidson, Esq.), detailed billing statements and time entries, as well as the affidavit of a local Mobile, Alabama attorney (Charles Fleming, Esq.) as an expert witness, with regard to the rates charged (attesting to their reasonableness) for litigating this case from January 2016 to the present date.  (Docs. 22-3, 22-4).  Cardinal has provided no information about Davidson other than he has a few years of practice and no longer works at the firm and that he billed at the same rate as Jackson, who has more years of experience.

---

14  These factors are very similar to the 12 set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir.1974), which is followed by courts within the Eleventh Circuit.

Specifically, the rates requested by Cardinal are as follows.   The rate **$211.20/hour** for **95.90 hours** (60.80 hours completed and billed plus 35.10 hours completed but not yet billed) of work performed by **Matthew Jackson** (with six (6) years of experience).   And the rate of **$211.20/hour** for **11.25 hours** work performed by **John Davidson** (with one (1) to two (2) years of experience) -- for a total of **107.15 hours** litigating this case against Hemacare.   (Docs. 22, 22-3 at 1-27 (including Aff. Jackson)).   This totals a request by Cardinal for **$15,216.96 in attorneys' fees already incurred and billed**[15] plus **$7,413.12 for attorneys' fees already incurred but not yet billed.**   (Doc. 22-3 at 29-34).

"A reasonable fee is one that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" <u>Dowling v. Litton Loan Servicing LP</u>, 320 Fed. Appx. 442, 446 (6th Cir. 2009).   Thee party seeking fees bears the initial burden of establishing the hours expended by providing detailed time records that document the tasks completed and the amount of time spent. <u>Granzeier v. Middleton</u>, 173 F.3d 568, 577 (6th Cir. 1999) (citing Hensley, 461 U.S. at 433).   And as set forth in <u>WMC Indus. Inc. v. IPS Corp.</u>, 2016 WL 5661858, *2-3 (W.D. Tenn. Sept. 29, 2015):

> The Sixth Circuit Court of Appeals has upheld an award of attorney fees and found billing records to be adequate where entries made by counsel "were sufficient even if the description for each entry was not explicitly detailed." *McCombs v. Meijer, Inc.,* 395 F.3d 346, 360 (6th Cir. 2005). *See Anderson v. Wilson,* 357 F.Supp.2d 991, 999 (E.D. Ky. 2005) (holding that the plaintiffs provided sufficiently detailed billing records where counsel disclosed "itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on Plaintiffs' case").
>
> Therefore, "[c]ounsel need not record in great detail each minute he or she spent on an item, [just] the general subject matter should be identified." *Imwalle v. Reliance Med. Prods.,* 515 F.3d 531, 553 (6th Cir. 2008)(citations omitted)(internal quotation marks omitted). See Hensley, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not

---

15 The Court presumes that Cardinal's request of only **$14,729.34** for these fees (for 72.05 hours at $211.20/hour) is based on a mathematical error.

required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."); *PPG Indus., Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1570 (Fed. Cir. 1988) (holding that the trial court abused its discretion in refusing to award fees based on lack of documentation when counsel failed to keep contemporaneous time records, but furnished affidavits and corroborative business records).

Additionally, "a district court itself has experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge if the documentation is considered inadequate." *Slimfold Mfg. Co. v. Kinkead Indus., Inc*., 932 F.2d 1453, 1459 (Fed. Cir. 1991).

Moreover, as specified in Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC, 2016 WL 4691294, *4 (E.D. Tenn. Aug. 8, 2016):

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is the legal community within the court's territorial jurisdiction or venue. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, *3 (E.D. Tenn. Jan. 30, 2008) (citing *Adcock-Ladd v. Sec'y of the Treasury,* 227 F.3d 343, 349 (6th Cir. 2000)). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Id.* (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986)).

The Court of Appeals has explained this distinction well:

The statutes use the words "reasonable" fees, not "liberal" fees. Such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. Under these statutes a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Coulter*, 805 F.2d at 149; *see also Lamar Adver. Co. v. Charter Township of Van Buren*, 178 Fed.Appx. 498 (6th Cir. 2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation.").

At the outset, the Court finds the requested rate of $211.20/hour for *both* a first or second year associate *and* a sixth year associate incongruous.   The Court cannot ascertain why a novice associate would bill the same rate as one in his sixth year of practice.   Nevertheless, in

determining the appropriate rate, the undersigned turns to the relevant legal community in the Court's territorial jurisdiction – Mobile, Alabama.   Indeed, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its knowledge and experience to determine the reasonableness and propriety of the requested fees. Stewart v. Cont'l Cas. Co., 2015 WL 225290, at *6 (S.D. Ala. Jan. 16, 2015).

Upon consideration of all affidavits and evidence submitted, the factors outlined above, and the Court's expertise, the undersigned finds the following rates reasonable.   Concerning Jackson, an associate with six (6) years of experience, the Court awards the rate of **$200.00/hour.**   Garrett Invest., LLC v. SE Prop. Holdings LLC, 956 F.Supp.2d 1330, 1341 (S.D. Ala. 2013) (awarding $190/hour to an associate with six (6) years of experience).   See also, e.g., Decorative Components Inc., Inc. v. ICON Computing Solutions, Inc., 2012 WL 5398800, *5-6  (S.D. Ala. Nov. 2, 2012) finding that $200.00 per hour was reasonable for an attorney with seven years experience); Gulf Coast Asphalt Co., L.L.C. v. Chevron U.S.A., Inc., 2011 WL 612737, 3-4 (S.D. Ala., Feb. 11, 2011) (same); Vanderbilt Mortg. and Fin., Inc. v. Crosby, 2015 WL 5178719, *2 (S.D. Ala. Sept. 4, 2015) ($185/hour as a reasonable rate for an attorney with three (3) to four (4) years of experience).

As for Davidson, an associate with one (1) or two (2) years of experience, the Court awards **$150/hour**, which this Court has deemed appropriate for an associate attorney with either indeterminate years of experience, or just a few.   See, e.g., Garrett Invest., 956 F.Supp.2d at 1341 (finding reasonable $150/hour for an associate with one (1) to (2) years of experience); Vision Bank v. FP Mgt., LLC, 2012 WL 222951, *3 (S.D. Ala. Jan. 25, 2012) (finding $150 per hour a reasonable rate for an associate attorney with an indeterminate amount of experience);

23

Adams v. Austal, U.S.A., L.L.C., 2010 WL 2496396, *6 (S.D. Ala. June 16, 2010) (finding $150.00 as reasonable for associates with a few years experience).   See also Breland v. Levada Ef Five, LLC, 2016 WL 1717207, *12 (S.D. Ala. Apr. 28, 2016); Denny Mfg. Co. v. Drops & Props, Inc., 2011 WL 2180358, *3–5 (S.D. Ala. June 1, 2011).

     **2.**     **Reasonable Hours Expended**

Cardinal seeks to recover **72.05 hours** of completed and billed work by Jackson and Davidson.   The Court finds, upon review of the relevant records, that Cardinal's counsel has made "a good faith effort to exclude from [its] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Additionally, the work performed during the hours requested are sufficiently described in the submitted documents, including delineation of those hours incurred by Jackson (60.80) versus Davidson (11.25).   As such, the Court finds **72.05 hours** of work is reasonable and awardable to Cardinal for the completed and billed work.

Additionally, Cardinal seeks to recover **35.10 hours** of completed but not yet billed work by Jackson. The Court finds, upon review of the relevant records, that for these hours Cardinal's counsel has again made "a good faith effort to exclude from [its] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. Additionally, the work performed during the hours requested are sufficiently described in the submitted documents.   As such, the Court finds that **35.10 hours** of work is reasonable and also awardable to Cardinal for the completed but not yet billed work.

     **3.**     **Lodestar**

As noted *supra*, the lodestar represents the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, which is a matter of the Court's sound

discretion.   <u>Hensley</u>, 461 U.S. at 433.   Cardinal may recover **$12,160.00** for Jackson's fees for the completed and billed work as follows: **60.80 hours** of work at **$200/hour**.   Additionally, Cardinal may also recover **$7,020.00** for Jackson's fees for the completed and billed work as follows: **35.10 hours** of work at **$200/hour**.   This results in a recovery of **$19,180.00** to Cardinal for Jackson's work.   Likewise, Cardinal may recover **$1,687.50** for Davidson's fees for the completed and billed work as follows: **11.25 hours** of work at **$150/hour**.   Thus, Cardinal's motion as to attorneys' fees is **GRANTED in part** and **DENIED in part** such that the total amount of recovery is **$20,867.50.**

### 4.   <u>Costs</u>

Cardinal seeks to recover **$487.62** in costs from Hemacare plus **$275.00** in expert fees for the expert witness services of Charles Fleming.   (Docs. 22, 22-3 (Aff. Jackson), 22-4 (Aff. Fleming)).   As to costs, Cardinal did not delineate what the costs are comprised of in its brief. However, the Court's review of Jackson's affidavit reveals $87.43 for subpoena process serving fees, $.19 for long distance calls and $400.00 for court filing fees.   (Doc. 22-3 at 16, 18).

Rule 54(d)(1) provides that "costs—other than attorney's fees—shall be allowed to the prevailing party."   This "language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." <u>Singleton v. Smith</u>, 241 F.3d 534, 539 (6th Cir. 2001).   Rule 54(d)(1) costs "are confined to the costs itemized in 28 U.S.C. § 1920*."* <u>In re Cardizem CD Antitrust Litig.</u>, 481 F.3d 355, 359 (6th Cir. 2007). See also <u>Crawford Fitting Co. v. J.T. Gibbins, Inc.</u>, 482 U.S. 437, 445 (1987).   Section 1920 states that a judge or clerk of any court of the United States may tax as costs:

(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily

obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
***

28 U.S.C. § 1920.

Filing fees and subpoena process server fees are recoverable; however, long distance telephone calls and expert witness fees are not.  Brown v. Lambert's Cafe III, 2016 WL 325131, *10 (S.D. Ala. Jan. 27, 2016) (citing Scelta v. Delicatessen Support Services, Inc., 203 F.Supp.2d 1328, 1339 (M.D. Fla. 2002) ("…long distance telephone calls…and expert witness fees ... are not compensable under § 1920 because these expenses are not enumerated in the statute[]")…However, the filing fee of $400.00…are determined to be compensable…"); Cromer-Tyler v. Teitel, 2007 WL 2684878, *7 (M.D. Ala. Sept. 11, 2007) (Pursuant to § 1920(1), fees paid to private process servers may be taxed as costs. See, e.g., U.S. EEOC v. W&O, Inc., 213 F.3d at 624[]").   Specifically, with regard to expert witnesses:

"…expert witness fees are not taxable as costs beyond the statutory per diem fee, mileage and the subsistence allowance provided for under 28 U.S.C. § 1821." D.B. v. Orange Cty., Fla., 2015 WL 847293, *3 (M.D. Fla. Feb. 26, 2015). As enunciated in Kerns, 2007 WL 2710372, *2 (emphasis added):

...It is black-letter law that expert witness fees cannot be taxed as costs. See, e.g., Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 463 (11th Cir.1996) ("we find that the district court erred in taxing as costs any amount for expert witness fees in excess of the $40 per day allowed under § 1821, and, upon remand, the district court should reduce the taxable costs accordingly"); L&W Supply Corp. v. Acuity, 475 F.3d 737, 741 (6th Cir.2007) ("we hold that expert witness fees may not be taxed as costs at a court's discretion under Rule 54(d) because § 1920 does not provide for them"); Walker v. Bozeman, 243 F.Supp.2d 1298, 1308 (N.D.Fla.2003) ("Expert witness fees (above the $40 daily attendance fee applicable to any witness ...) are not recoverable.")....

26

Additionally, pursuant to 28 U.S.C. § 1920(3), courts may tax costs for "fees and disbursements for ... witnesses." Witness costs are set by 28 U.S.C. § 1821(b), through which "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." In short, these costs are limited to witness payments of $40/day. *PODS Ent., LLC v. U-Haul Int'l, Inc.*, 2015 WL 5021668, *1 (M.D. Fla. Aug. 24, 2015). Expenses for expert witnesses which exceed $40 per day (the statutory per diem fee), mileage and subsistence allowance under Section 1821 are not taxable. *D.B.*, 2015 WL 847293, *3-4. Moreover, this Court's Standing Order 13 provides "[n]o fees of expert witnesses in excess of the above mentioned attendance, subsistence and travel fees shall be taxed." Further, Dr. Steward was not a witness at trial such that even the $40/day cost is inapplicable. The expert witness costs Austal seeks then, fall outside those costs which Section 1920 permits, and are "clearly nonrecoverable." *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996); *Kivi v. Nationwide Mut. Ins. Co.,* 695 F.2d 1285, 1289 (11th Cir. 1983) ("additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in federal courts[ ]")…

Bumpers v. Austal U.S.A., L.L.C., 2015 WL 6870122, *14 (S.D. Ala. Nov. 6, 2015).

Concerning Fleming, there is no indication as to what expert capacity he served, or how he is involved in this case apart from providing an affidavit attesting to the reasonableness of the fees and costs sought by Cardinal.   Additionally, there is no contractual provision in the Invoices' Terms & Conditions of Sale referencing recovery for expert fees.   Moreover, as noted in Vision Bank v. Anderson, 2011 WL 2142786 , *4 (S.D. Ala. May 31, 2011):

> … Plaintiff also seeks to recover $275.00 charged by Fleming for his work as an expert in this matter. None of the agreements at issue contain unambiguous terms by which Defendant agrees to pay expert fees…an Alabama "trial court does not have the discretion to award fees for expert witnesses unless a statute authorizes the recovery of such fees." *Se. Envtl. Infrastructure, L.L.C. v. Rivers,* 12 So.3d 32, 52 (Ala.2008) (internal quotations omitted). Plaintiff has not identified any Alabama statute which would authorize its recovery of expert fees in this matter, nor has it demonstrated how this expert fee is "a component of otherwise compensable attorneys fees[.]" *Id.* (internal quotations omitted). Therefore, Plaintiff's request for expert fees is **DENIED.**

Further, there was no trial and thus, what would be Fleming's maximum expert fee – the $40/day

cost – is not recoverable.   See also Natures Way Marine, LLC v. Everclear of Ohio, Ltd., 2015 WL 1757116, *7-8 (S.D. Ala. Apr. 17, 2015).

Thus, Cardinal's motion is **GRANTED** as to the $400.00 court filing cost and $87.43 in subpoena process server fees but **DENIED** as to the long distance telephone calls and expert witness fee request, for a total recovery of **$487.43** in **costs.**

**VII.**   Conclusion

Accordingly, it is **ORDERED** that Plaintiff's Motion for Summary Judgment (Docs. 20, 22) is **GRANTED in part** and **DENIED in part** as set forth *supra* in the total amount of **$688,920.62** comprised of: $667,565.69 (plus interest accruing at the contractual rate) on Cardinal's claims for breach of contract, account stated and open account; **$20,867.50** in attorney's fees; and $487.43 in costs.

Defendant Hemacare's claims against Third-Party Janis Spratlin remain pending.

**DONE** and **ORDERED** this the **11**th day of **January 2017.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**